

## MODIFICATION AGREEMENT

Borrower ("I"): **Rosa J Bonds**
Lender or Servicer ("Lender"): **JP Morgan Chase Bank, N.A.**
Date of mortgage, deed of trust, or security deed ("Mortgage") and Note or Line of Credit Agreement ("Note"): **November 10, 2004**

Property Address ("Property"): **26226 Glenhaven Dr, Zephyrhills, FL 33544**

If I successfully follow the Loan Workout Plan (the "Plan") in Section 2 and my representations in Section 1 continue to be true in all material respects, then this Modification Agreement ("Agreement") will, as set forth in Section 3, amend and supplement (1) the Mortgage on the Property, and (2) the Note secured by the Mortgage. The Mortgage and Note together, as they may previously have been amended, are referred to as the "Loan Documents." Capitalized terms used in this Agreement and not defined have the meaning given to them in Loan Documents.

I understand that after I sign and return two copies of this Agreement to the Lender, the Lender will send me a signed copy of this Agreement. This Agreement will not take effect unless the preconditions set forth in Section 2 have been satisfied.

1. **My Representations.** I represent to Lender and agree:

   A. I am experiencing a financial hardship, and as a result, am in default under the Loan Documents;

   B. The Property is neither in a state of disrepair, nor condemned;

   C. There has been no change in the ownership of the Property since I signed the Loan Documents; and

   D. I am not a party to any pending bankruptcy proceeding or any litigation involving the Loan Documents, except to the extent I may be a defendant in a foreclosure action.

2. **The Loan Workout Plan.** I will return this signed agreement no later than **March 23, 2012**. My trial payments will be due on **April 1, 2012, May 1, 2012** and **June 1, 2012**. The new monthly principal and interest payment is **$298.29**. I will pay the Lender the new monthly total payment amount of **$482.10**, which may include payment for Escrow Items, including real estate taxes, insurance premiums and other fees, if any, of **$183.81** ("Monthly Escrow Payment"). The escrow amount may vary at the time of the final modification due to changes in anticipated disbursements during the trial period, refunds or adjustments to the escrow account, or if we pay unexpected bills on your behalf. This escrow amount will also change over time with changes in your property taxes and insurance obligations.

   During the period (the "Trial Period") commencing on the date of this Agreement and ending on the earlier of: (i) the Modification Effective Date (as defined in Section 3) or (ii) termination of this Agreement, I understand and acknowledge that:

   A. TIME IS OF THE ESSENCE under this Agreement;

   B. The Lender will suspend any scheduled foreclosure sale, provided I continue to meet the obligations under this Agreement, but any pending foreclosure action will not be dismissed and may be immediately resumed from the point at which it was suspended if this Agreement terminates, and no new notice of default, notice of intent to accelerate, notice of acceleration, or similar notice will be necessary to continue the foreclosure action, all rights to such notices being hereby waived;

   C. All trial payments will be placed in suspense until they are made as agreed upon and will then be applied to the account after the modification has been completed as set forth in Section 3 and will reduce the unpaid principal balance;

   D. When the Lender accepts and posts a payment during the Trial Period it will be without prejudice to, and will not be

---

¹If more than one Borrower or Mortgagor is executing this document, each is referred to as "I." For purposes of this document words signifying the singular (such as "I") shall include the plural (such as "we") and vice versa where appropriate.

02_22_2012



16373_GMFR_AGMT
03012012UP001439

deemed a waiver of, the acceleration of the loan or foreclosure action and related activities and shall not constitute a cure of my default under the Loan Documents unless such payments are sufficient to completely cure my entire default under the Loan Documents;

E. If (i) I do not make the three Trial Period payments required under the Section 2 Plan in a timely manner; or (ii) prior to the Modification Effective Date set forth in Section 3 the Lender determines that my representations in Section 1 are no longer true and correct the Loan Documents will not be modified and this Agreement will terminate. In this event the Lender shall have the rights and remedies provided by the Loan Documents and any payment I make hereunder shall, at the Lender's option, be applied to amounts I owe under the Loan Documents or refunded to me; and

F. I understand that the Plan described in this Section 2 is not a modification of the Loan Documents and that the Loan Documents will not be modified unless and until (i) I meet all of the conditions required for modification under Section 3 and (ii) the Modification Effective Date (as defined in Section 3) has occurred. I further understand and agree that the Lender will not be obligated or bound to make any modification of the Loan Documents if I fail to meet any one of the requirements under this Agreement; and

G. I understand and agree that if I was discharged in a Chapter 7 bankruptcy proceeding subsequent to the execution of the Loan Documents, I am voluntarily entering into this modification for the benefits to be obtained thereby and not as a reaffirmation of the debt evidenced by the Note, and I further understand and agree, and the Lender, by its execution of this Agreement also agrees, that nothing contained herein is intended to impose personal liability for the Loan in violation of such discharge.

3. **The Modification.** If my representations in Section 1 continue to be true in all material respects and all preconditions to the modification set forth in Section 2 have been met, the Loan Documents will automatically become modified on **June 1, 2012** (the "Modification Effective Date") and all unpaid late charges and other non-interest fees up to the Modification Effective Date will be waived. The first modified payment will be due on **July 1, 2012**.

A. The Maturity Date will be: **December 1, 2034**.

B. The new Principal balance of my Note will be **$48,875.00** (the "New Principal Balance"). This balance includes all amounts and arrearages that will be past due (excluding those charges referenced in the paragraph above that are being waived). This New Principal Balance takes into account unpaid principal in the amount of **$47,349.32**, which has been forgiven.

The New Principal Balance is calculated as follows:

| | |
|---|---|
| Current Principal Balance | $81,385.56 |
| Interest | + $10,681.86 |
| Escrow Advance* | + $4,156.90 |
| Less Credits | - $0.00 |
| Less Forgiveness | - $47,349.32 |
| New Principal Balance | $48,875.00 |

*Funds that Chase has advanced on your behalf to pay taxes and/or insurance premiums or other escrow items.

C. Interest at the rate of **4.87** percent will begin to accrue on the New Principal Balance as of **June 1, 2012** ("Interest Rate Effective Date").

I will begin to make the modified monthly payment amount on **July 1, 2012** and on the same day of each month thereafter (the "Amortizing Payment Date"). Beginning on the Amortizing Payment Date, I will begin to make the new total monthly payments in an amount necessary to repay the unpaid balance of the New Principal Balance in




substantially equal monthly installments of principal and interest at the interest rate then in effect over the remaining term of the Loan.

**The estimated payment schedule for the modified Loan will be as follows:**

| Years | Interest Rate | Interest Rate Change Date | Estimated Total Monthly Payment Amount Including Escrow | Payment Begins On | Number of Monthly Payments |
|---|---|---|---|---|---|
| 1-23 | 4.87% | 06/01/2012 | $482.10 | 07/01/2012 | 270 |

Lender will not accept multiple monthly payments in advance of their due date.

Notwithstanding the foregoing, I agree that unless sooner paid, all principal, interest and other amounts due under the Loan Documents shall be paid on the new Maturity Date. The above terms in this Section 3.C. shall supersede any provisions to the contrary in the Loan Documents, including but not limited to, provisions for an adjustable or step interest rate.

D. I will be in default if I do not comply with the terms of the Loan Documents, as modified by this Agreement.

E. If a default rate of interest is permitted under the Loan Documents, then in the event of default under the Loan Documents, as amended, the interest that will be due will be the rate set forth in Section 3.C.

4.  **Additional Agreements.** I agree to the following:

   A. That all persons who signed the Loan Documents or their authorized representative(s) have signed this Agreement, unless (i) a borrower or co-borrower is deceased; (ii) the borrower and co-borrower are divorced and the property has been transferred to one spouse in the divorce decree, the spouse who no longer has an interest in the property need not sign this Agreement (although the non-signing spouse may continue to be held liable for the obligation under the Loan Documents); or (iii) the Lender has waived this requirement in writing.

   B. That this Agreement shall supersede the terms of any modification, forbearance or workout plan that I previously entered into with Lender for my Mortgage.

   C. To comply, except to the extent that they are modified by this Agreement, with all covenants, agreements, and requirements of Loan Documents including my agreement to make all payments of taxes, insurance premiums, assessments, impounds, and all other payments, the amount of which may change periodically over the term of my Loan.

   D. That the Loan Documents are composed of duly valid, binding agreements, enforceable in accordance with their terms and are hereby reaffirmed.

   E. That all terms and provisions of the Loan Documents, except as expressly modified by this Agreement, remain in full force and effect; nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the Loan Documents; and that except as otherwise specifically provided in, and as expressly modified by, this Agreement, the Lender and I will be bound by, and will comply with, all of the terms and conditions of the Loan Documents.

   F. That, as of the Modification Effective Date, notwithstanding any other provision of the Loan Documents, I agree as follows: If



all or any part of the Property or any interest in it is sold or transferred without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by the Mortgage. However, Lender shall not exercise this option if state or federal law, rules or regulations prohibit the exercise of such option as of the date of such sale or transfer. If Lender exercises this option, Lender shall give me notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which I must pay all sums secured by the Mortgage. If I fail to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Mortgage without further notice or demand on me.

G. That, as of the Modification Effective Date, I understand that the Lender will only allow the transfer and assumption of the Loan, including this Agreement, to a transferee of my property as permitted under the Garn St. Germain Act, 12 U.S.C. Section 1701j-3. A buyer or transferee of the Property will not be permitted, under any other circumstance, to assume the Loan. Except as noted herein, this Agreement may not be assigned to, or assumed by, a buyer or transferee of the Property.

H. That, as of the Modification Effective Date, if any provision in the Note or in any addendum or amendment to the Note allowed for the assessment of a penalty for full or partial prepayment of the Note, such provision is null and void.

I. That, I will cooperate fully with Lender in obtaining any title endorsement(s), or similar title insurance product(s), and/or subordination agreement(s) that are necessary or required by the Lender's procedures to ensure that the modified mortgage loan is fully enforceable upon modification and that if, under any circumstance and notwithstanding anything else to the contrary in this Agreement, the Lender does not receive such title endorsement(s), title insurance product(s) and/or subordination agreement(s), then the terms of this Agreement will not become effective on the Modification Effective Date and the Agreement will be null and void.

J. That I will execute such other documents as may be reasonably necessary to either (i) consummate the terms and conditions of this Agreement; or (ii) correct the terms and conditions of this Agreement if an error is detected after execution of this Agreement. I understand that a corrected Agreement will be provided to me and this Agreement will be void and of no legal effect upon notice of such error. If I elect not to sign any such corrected Agreement, the terms of the original Loan Documents shall continue in full force and effect, such terms will not be modified by this Agreement, and I will not be eligible for a modification.

K. Mortgage Electronic Registration Systems, Inc. ("MERS") is a separate corporation organized and existing under the laws of Delaware and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, (888) 679-MERS. In cases where the loan has been registered with MERS who has only legal title to the interests granted by the borrower in the mortgage and who is acting solely as nominee for Lender and Lender's successors and assigns, MERS has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling the mortgage loan.

L. That Lender may collect and record personal information, including, but not limited to, my name, address, telephone number, social security number, credit score, income, payment history, government monitoring information, and information about account balances and activity. In addition, I understand and consent to the disclosure of my personal information and the terms of this Modification Agreement by Lender to any investor, insurer, guarantor or servicer that owns, insures, guarantees or services my mortgage loan.

M. I agree that if any document related to the Loan Documents and/or this Agreement is lost, misplaced, misstated, inaccurately reflects the true and correct terms and conditions of the loan as modified, or is otherwise missing, I will comply with the Lender's request to execute, acknowledge, initial and deliver to the Lender any documentation the Lender deems necessary. If the original promissory note is replaced, the Lender hereby indemnifies me against any loss associated with a demand on the original note. All documents the Lender requests of me under this Section 4. M shall be referred to as "Documents." I agree to deliver the Documents within ten (10) days after I receive the Lender's written request for such replacement.



N. If I receive a separate notice from Lender that I am required to attend additional debt management counseling, I agree to promptly attend such counseling and provide evidence of attendance to Lender upon request.

O. If this Agreement includes an extension of the maturity date for my loan and the Property is located in a Special Flood Hazard Area ("SFHA"), as part of this payment extension process, I understand that the Lender is required by law to send me another flood notice confirming the Property's flood status. Lender is required to do so even though it periodically checks to ensure that I have flood insurance. As a result, if I receive this additional notice from Lender, I agree to immediately sign the Flood Notice Acknowledgment, as required, and return it to Lender. I also acknowledge that I am responsible for continuing any insurance coverage on the Property beyond the original maturity date of my loan.

P. That this Agreement constitutes notice that the Lender's waiver as to payment of Escrow Items, if any, has been revoked, and I have been advised of the amount needed to fully fund my Escrow Account.

# CHASE ○

## TO BE SIGNED BY BORROWER ONLY

**BORROWER** BETWEEN JPMorgan Chase Bank, N.A. AND **ROSA J BONDS**, WITH A MODIFICATION EFFECTIVE DATE OF **JUNE 1, 2012**.

In Witness Whereof the Borrower(s) have executed this agreement.

_____     3/6/12
**Borrower – Rosa J Bonds**                         Date

02_22_2012



16373_GMFR_AGMT
COPY-03012012UP001439

# CHASE 🏦

**TO BE SIGNED BY LENDER ONLY**

**LENDER** BETWEEN JPMorgan Chase Bank, N.A. AND **ROSA J BONDS**, EFFECTIVE DATE OF **JUNE 1, 2012**.

WITH A MODIFICATION

In Witness Whereof the lender has executed this Agreement.

Lender

JPMORGAN CHASE BANK, N.A.

By: _____

Date: _____

02_22_2012



16373_GMFR_AGMT
03012012UP001439